JANVIER, Judge.
The plaintiff, a laborer, brought this suit for maximum compensation against Bal Construction Company, Inc., alleging that while in the employ of that corporation he sustained accidental injuries, which have permanently and totally disabled him.
The defendant denied that plaintiff had been in its employ, and further denied the occurrence of any such accident as alleged.
Defendant then alleged that it had secured compensation liability insurance from certain designated insurers and made those insurers third party defendants, praying that should any judgment be rendered against it in favor of plaintiff, it have a similar judgment against the said insurers.
For clarification of the issues which are now involved, it is well to state that the third party defendant controversy is no longer at issue, that phase of the controversy having terminated without appeal.
In dismissing the suit of plaintiff, the District Judge said:
“The Court is convinced that the plaintiff was contacted by Bonds and that he worked for the Bal Construction Co., on the Sunday in question. However, the Court was not impressed with the testimony or the demeanor of the Plaintiff.
“Further, the Court is of the opinion that the Plaintiff did not prove, by the preponderance of the evidence, that he was injured on the job.”
As indicated by that statement, it is evident that there are two questions of fact which must be determined. First, was plaintiff in the employ of defendant as alleged, and second, if there was such employment, did any such accident take place ?
There are certain facts which, if in dispute, are shown by evidence of which there is no contradiction.
Another laborer, Jessie James Butler, was a friend of plaintiff and was also known by a third person, Charles Bonds, who at that time was a more or less regular employee of defendant but who is no longer employed by it.
On the morning of Sunday, October 18, 1964, Charles Bonds says that he knew that his employer needed certain laborers to assist in the demolition of a building in the business area of New Orleans and he knew that Butler might be willing to put in that day at that job. He called on Butler and found him desirous of working and Butler also suggested that Hutchinson, the present plaintiff, might be willing to work on that job.
Bonds and Butler then called on Hutchinson, waked him up, and found that he was willing to work. Bonds and Butler were in a track of the defendant corporation and Hutchinson, in his own car, followed them to the place at which the work was being conducted. Up to this point these three agree in their testimony. Plaintiff says that he was put to work and was required to move some very heavy steel beams; that these were so heavy that four men were required on each, two at each end, and that, while moving one of the beams, the other man on his end of the beam “stumbled and I had to hold the beam.” Butler, who was one of the men on the other end of the beam, confirms this statement, saying: “When we were throw *73 ing them off, I and another guy on the front end, Claudel (Hutchinson) and another on the lower end, his partner staggered and dropped the beam, and it dropped the beam, the weight on him.”
Bonds says that he knew nothing of any accident, hut that plaintiff “started complaining about the back hurting.”
Bonds says that plaintiff discontinued work and went home in his own car and that a few days later, he, Bonds, paid plaintiff out of his own pocket for the work he had done on the day of the alleged accident. He says that he gave him $8.00 and that “I got it from the boss.”
This is the only evidence as to employment or as to an accident. Defendant’s records, according to the evidence by it showed no evidence of the employment nor of any payment to him.
All of the employees who were working on that day, except Butler and Bonds, who testified, said that they had never seen plaintiff at all until they saw him in court at the trial.
Edward Jackson, an employee, said: “The first time I seen him is when I came in here.” Joseph Ernest, another employee, said that he had worked every day and when asked whether he had seen Hutchinson said: “I never saw him.” Robert Pearl said: “Today is the first time I ever saw him.” Johnny Scott said: “My first time seeing him is today.” Mike Badalamenti, one of the officers of defendant corporation, said that he had not seen plaintiff on the day of the alleged accident, and that he knew nothing at all about his having been employed.
As to plaintiff’s condition, there is nothing to contradict the testimony of Dr. Un--kauf which is to the effect that he believes that Hutchinson now has a disc injury. However, the testimony of this doctor does not make it certain he did not have such a disc injury prior to this alleged occurrence, nor that this occurrence was the cause of that condition.
It is quite clear that the plaintiff had had several earlier compensation claims and that he had had a back injury of some kind at least five years before the doctor saw him in January, 1966. The doctor was at first certain that he had known nothing about any earlier back injury of plaintiff, but finally recollected that plaintiff had told him some five years or so earlier he had had “a pulled muscle in the back and was off of work for three or four months * * When asked whether that pulled muscle might have been the forerunner of the trouble plaintiff was having with his back, the doctor said that he did not think so.
Surely there is nothing in this record to justify the conclusion that the District Judge was manifestly in error.
The judgment appealed from is affirmed.
Affirmed.